UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**MARVIN SPRY,**

      Defendant,

v.                                          Criminal Action No.
                                                      2:01-cr-00011-01

**UNITED STATES OF AMERICA,**

      Plaintiff.

### MEMORANDUM OPINION AND ORDER

Pending is defendant Marvin Spry's <u>pro se</u> motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed on June 2, 2022, (ECF 729) ("defendant's motion"), in which he also seeks a sentence reduction under § 3553(a). The court notes that on July 29, 2022, a series of motions alleging somewhat similar grounds were denied and, by separate order for unrelated reasons, the defendant's sentence was reduced from 140 years to 360 months.

On August 22, 2022, the government filed a motion to seal its response to the defendant's motion, (ECF 742), which the court granted on August 24, 2022, (ECF 743). Thereafter, the government filed, under seal to protect voluminous medical records of the defendant, a Response of the United States to

Defendant's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i), on August 24, 2022, (ECF 746) ("Government's Resp."), in which it argues that the motion should be denied and that a sentence reduction is unwarranted.

Defendant filed a motion for an extension of time to file a reply to the government's response on August 31, 2022, (ECF 747), followed by the filing of his reply on September 6, 2022, (ECF 748) ("defendant's reply").

## I. Background

On June 6, 2001, following a trial, a jury convicted defendant of (1) conspiracy to distribute more than 100 kilograms of marijuana, in violation of Title 21, U.S.C. § 846; (2) aiding and abetting by others with possession with intent to distribute more than 50 kilograms of marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); (3) money laundering, in violation of Title 18, U.S.C. § 1956(a)(1)(B)(i); (4) aiding and abetting with possession with intent to distribute marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); (5) aiding and abetting by others with distribution for renumeration of a quantity of marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); (6) obstruction, in violation of Title 18, U.S.C. § 1512(b)(3); and (7) conspiring

to distribute more than 400 grams of cocaine, in violation of Title 21, U.S.C. § 846.  ECF 164.

The court imposed on the defendant a 140-year prison sentence, to run concurrently with the remainder of a 71-month sentence in an earlier separate case in this court, followed by a five-year term of supervised release.  ECF 218.  On July 29, 2022, as earlier noted, upon motion of the defendant, the court reduced defendant's sentence to 360 months pursuant to the United States Sentencing Guideline Amendment 782.  ECF 733. Defendant is currently incarcerated at FCI Hazelton with a scheduled release date of April 26, 2027.  See https://www.bop.gov/inmateloc/.

## II.  Standard of Review

Generally, once a court has imposed a term of imprisonment, it lacks the authority to modify the sentence.  18 U.S.C. § 3582(c).  Congress enacted the First Step Act in December 2018, which amended section 3582 to enable courts to reduce a term of imprisonment under certain circumstances. First Step Act of 2018, Pub. L. No. 115–391, § 603, 132 Stat. 5194, 5239.

As amended, section 3582 provides that after satisfying an administrative exhaustion requirement, a court may

reduce a sentence if it finds that extraordinary and compelling reasons warrant such a reduction, that reduction is consistent with the applicable policy statements issued by the Sentencing Commission, and that release is consistent with the factors listed under 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).

### III. Discussion

It is undisputed that defendant satisfied the administrative exhaustion requirement under section 3582.  He further contends that his circumstances constitute extraordinary and compelling reasons under section 3582 and satisfy the conditions under § 1B1.13(b)(2) which include, in relevant part:

> (2)  Age of the Defendant. -- The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical . . . health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Defendant satisfies conditions (A) and (C), as he is now 70 and has served over 10 years of his term of imprisonment. Defendant offers in support of condition (B) that he has "a host of unresolved medical condition[s], not being cared [for]." Defendant's Motion at 2.  He claims that prison staff "refuses to treat [his] medical issues" and that "Hazelton is no longer a level care facility because Hazelton los[t] its contract with the outside hospital which would qualify Hazelton to continue

its level care facility." Id. at 2-3.  In summary, defendant claims that he is not receiving minimal, necessary medical care. Id. at 3.

To support his position, defendant claims, "In Feb. 2022 I fell on ice, and medical would not treat me.  I am in constant pain throught-out [sic] the day."  Defendant attached to his motion an Inmate Request to Staff, dated May 12, 2022, by which he sought a medical appointment.  See Defendant's Motion, Attach., Inmate Request to Staff, May 12, 2022.  On the same request form on a section designated for prison staff to make notes, and reflecting the same date, is a signature by a staff member with the message "you are in the schedule to be seen next week."  Id.  Defendant also attached a form dated May 17, 2022, in which he complained, "I have been sent back to unit for 2 wks in a row not seen by anyone when I fell on ice at rec." Defendant's Motion, Attach., FCI Hazelton Inmate Medical Sick Call Form, May 17, 2022.

In response, the government obtained the defendant's medical records from the prison.  See Government's Resp., Ex. 1, ECF 744-1.  The medical records indicate that defendant was treated after his fall on ice on February 19, 2022, and received additional medical treatment later that same day when he sought further care.  Id. at 57-62.  According to defendant's medical

records, from the date of his fall in February 2022 until the government requested the records, defendant was seen by the medical staff approximately 16 times and received numerous x-rays, CAT scans, MRIs, prescriptions, and follow-up appointments related to the fall and other medical needs.  Id. at 1-62.  A letter regarding the resolution of defendant's complaint about his treatment after his fall details the treatment he received immediately after the fall and the plan of care developed by defendant's treating medical providers.  See Letter from P. Boch, BSN, RN-BC, CCHP to Marvin Spry (February 23, 2022), Government's Resp., Ex. 1 at 208.

The medical records also reflect the continued care defendant has received for his conditions unrelated to his fall, including treatment for diabetes, and that he has received various treatments and medications as needed.  See id. at 1-233.  Throughout his medical records, defendant is noted to be in stable condition.  Id. at 17, 57, 68, 81, 94.

Defendant acknowledges in his reply that he has received medical care for various ailments including an outpatient ultrasound on his leg and a compression sock.  Defendant's reply at 2.  He claims that he has experienced years-long delays in medical care and that "[t]here is no doubt here that FCI Hazelton has no intention to properly treat

[defendant], find out what happened to him and give him proper treatment. Id. at 3. He insists that after his February 19, 2022, fall on ice, he "received unaccept[a]ble and woefully inadequate treatment." Id. at 2. In support of this position, defendant attached an affidavit from a fellow inmate who witnessed defendant's fall. See Defendant's Motion Ex. B, at 16. Therein, the affiant states that he witnessed defendant slip and fall on ice, assisted him to his walker, and "[n]o medical came to [defendant]." Id.

Defendant's contentions about inadequate medical care as related to his fall on ice are not borne out in his medical records. The government does not dispute that defendant fell on ice and required medical treatment. Indeed, defendant's medical records indicate that he was seen by medical at least twice on the day of his fall and was both observed to be stable and reported to Health Services that he was stable. See Government's Resp., Ex. 1 at 57.

Defendant reiterates in his reply his position that he continues to seek medical treatment for his fall on ice, and his requests go unanswered. However, defendant attached Inmate Sick Call Forms to his reply, dated August 19, 2022, and September 7, 2022, in which he complains of head and neck pain. See Defendant's Motion Ex. C, at 30, 32. Both of defendant's

7

requests reflect the responses "scheduled" and "pending outside appt," indicating his requests have been acknowledged and appointments have been scheduled for him.  Id.  Defendant does not refute the repeated indications throughout his medical records that he is in stable condition.

Inasmuch as the defendant's medical records demonstrate that defendant received sufficient medical care after the fall of which he complains in addition to medical care for other ailments, and that he is not seriously physically deteriorating, the court finds that defendant has failed to establish a sufficiently compelling and extraordinary reason warranting relief under the Policy Statement, section 1B1.13(b)(2).

Defendant provides no support for his contention that FCI Hazelton is no longer a level care facility.  See Defendant's Motion at 3.  On this point, the government counters, without citation, that the Health Services Administrator at FCI Hazelton stated that the prison continues to have ambulance services and has not lost any contracts.  Government's Resp. at 7-8.  Inasmuch as neither the defendant nor the government supported their positions on this issue, it fails to amount to an extraordinary reason warranting relief.

Inasmuch as the defendant has failed to establish an extraordinary and compelling reason warranting relief, the court need not review this matter under section 3553(a).

Moreover, the court is informed by its probation officer that the defendant was on February 2, 2024, released to serve the balance of his sentence in a residential reentry center ("RRC"), but by virtue of defendant having engaged in serious misconduct that violated the rules and regulations of the RRC, he was ordered returned to custody at Hazelton to complete his sentence.

## IV. Conclusion

Inasmuch as the court has considered defendant's reply herein, his motion for an extension is GRANTED.

In light of the foregoing Discussion, the court DENIES defendant's June 2, 2022, motion for compassionate release. It is so ORDERED.

The Clerk is directed to transmit copies of this order to the defendant, all counsel of record, the United States Probation Office, the United States Marshal, and to the Federal Bureau of Prisons.

ENTER: December 10, 2024

John T. Copenhaver, Jr.
Senior United States District Judge